**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>BLACKSTONE FINANCIAL<br>HOLDINGS, LLC<br><br>               Debtor | )<br>)    Chapter 7<br>)    Case No. 11-19890-MSH<br>)<br>)<br>)<br>) |

**MEMORANDUM OF DECISION ON MOTION OF JPMORGAN CHASE BANK, N.A. FOR JUDGMENT ON THE PLEADINGS AS TO THE OBJECTION TO ITS CLAIM**

Steven Weiss, the Chapter 7 trustee of the bankruptcy estate of Robert E. Lockwood II, and two of Mr. Lockwood's creditors, Recovery Capital LLC and Jeffrey Horvitz, (collectively, the "Objectors") filed a pleading in this case entitled "Objection to JPMorgan Chase Bank's Claim and Request for Determination of Secured Status" (the "Objection") seeking the disallowance of the $3,834,976.77 proof of claim filed in this case by JP Morgan Chase Bank, N.A. ("Chase") and a determination that the mortgage securing that claim is invalid. Although the Objection seeks the kind of relief which Fed. R. Bankr. P. 3007(b) mandates be sought by way of a complaint in an adversary proceeding, the Objectors have been permitted to proceed with their Objection, giving rise to a contested matter, subject to their agreeing that all Federal Rules of Bankruptcy Procedure which would apply in an adversary proceeding will apply here. Chase initially filed a response to the Objection but then filed a motion for judgment on the pleadings with respect to the Objection. The latter is now before me for adjudication.

**Facts**

The facts necessary to decide this matter are taken from the Objection and attached documents and Chase's initial response and accompanying documents. I also take judicial notice of the docket and pleadings in this case, including Chase's motion for relief from stay and the

settlements filed and approved in this case, the docket and pleadings in Robert Lockwood's bankruptcy case (No. 10-15249), and the docket and pleadings in adversary proceeding 13-1045, commenced by Mr. Weiss in Mr. Lockwood's bankruptcy case.[1]

For approximately twenty-five years, interrupted only by some time behind bars for securities fraud, Mr. Lockwood resided in a home located at 89-91 West Street in Beverly, Massachusetts. On April 6, 1998, Mary Lockwood, Mr. Lockwood's former wife, who held title to the Beverly property,[2] transferred it to the 89 West Street Realty Trust.[3] Mr. Lockwood vacated the Beverly property in 2014 as part of a settlement with Mr. Weiss in Mr. Lockwood's bankruptcy case.[4]

When the Trust was established on August 11, 1997, the Lockwoods' two sons were the beneficiaries.[5] Under the Declaration of Trust, one or more of the beneficiaries may terminate the Trust, and acting collectively, may alter the Declaration of Trust or the schedule of beneficiaries.[6] The Declaration of Trust further provides that "[t]he natural or legal guardian or conservator may act for any Beneficiary who is not then of full legal age and legal capacity."[7] The Declaration of Trust authorizes the trustee to exercise power over the trust *res*, which

---

[1] The Court may take judicial notice of its own docket. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.),* 196 F.3d 1, 8 (1st Cir.1999).

[2] Objection at ¶ 7

[3] Exhibit J to the Objection

[4] Objection at ¶ 1

[5] Schedule of Beneficiaries attached to the Declaration of Trust

[6] Declaration of Trust at Clause Fifth A

[7] Declaration of Trust at Clause Fifth D

included the Beverly property, but only at the direction of the beneficiaries, acting collectively. For example, the trustee may encumber the Trust property subject to certain conditions:

> The Trustee(s) shall have the following powers, in each case only to be exercised at the direction of all of the Beneficiaries, but without order, leave or license of Court: . . .
> F. To borrow money on such terms as the Trustee may deem desirable and to mortgage, pledge or grant any interest in any real property or personal property as security therefor . . . .[8]

In July 2003, when the Lockwoods divorced, Mary Lockwood resigned as trustee of the Trust.[9] On July 17, 2003, Mr. Lockwood, as "one hundred percent (100%) beneficiary" of the Trust, appointed Susan Winslow, a long-time employee of Mr. Lockwood,[10] as the successor trustee for the Trust.[11] A second copy of the July 17, 2003 appointment of Ms. Winslow as trustee contains the additional language "as legal guardian for the beneficiaries" after Mr. Lockwood's name under the signature line.[12] There are two unrecorded schedules of beneficiaries for the Trust. One schedule, dated August 21, 2003, lists the sons as equal beneficiaries of the Trust while another schedule, dated October 14, 2003, states that Mr. Lockwood held a life estate in the Trust with his two then minor sons holding the beneficial remainder interests.[13]

---

[8] Declaration of Trust at Clause Sixth F

[9] *Id.*

[10] Transcript of the September 11, 2008 deposition of Susan Winslow, attached as Exhibit H to the Objection ("Winslow Deposition") at p. 7

[11] Exhibit E to the Objection

[12] Exhibit F to the Objection

[13] The Objectors prepared a timeline of significant dates for activities affecting the Beverly property (the "Timeline"), which is attached as Exhibit A to the Objection.

On December 16, 2003, Mr. Lockwood's then minor sons executed a certificate authorizing Ms. Winslow to grant Washington Mutual Bank ("WAMU") a mortgage on the Beverly property as security for a loan.[14] On or about January 14, 2004, Ms. Winslow, as trustee of the Trust and at Mr. Lockwood's direction, executed a $3.9 million note secured by a mortgage on the Beverly property in favor of WAMU.[15] Chase now holds the note and mortgage. The purpose of the loan was to enable Mr. Lockwood to buy out Ms. Lockwood's interest in the Beverly property as required in their divorce decree.[16] Ms. Lockwood received $1,600,000 from the loan proceeds while the prior mortgagee received $1,431,440 in satisfaction of its mortgage.[17] It is unclear who received the remaining net proceeds of $32,155.

WAMU became a casualty of the Great Recession. When it failed, the Federal Deposit Insurance Corporation ("FDIC") was appointed its receiver. On September 25, 2008, the FDIC and Chase executed a Purchase and Assumption Agreement (the "P&A Agreement") whereby Chase purchased WAMU's assets in bulk from the FDIC, including the note and mortgage on the Beverly property, but assumed only certain of WAMU's liabilities.

On May 13, 2010, Mr. Lockwood filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing his bankruptcy case.[18] Reorganization efforts failed and the

---

[14] Exhibit E to Chase's Response to Objection. The older of Mr. Lockwood's sons, Robert, turned 18 on July 20, 2005, while the younger son, Thomas, reached the age of majority on January 17, 2008. Mr. Weiss maintains that the children's signatures are forged. My ruling on Chase's motion for judgment is not dependent on the authenticity of the signatures.

[15] Ms. Winslow testified that she never did anything with respect to the Trust without Mr. Lockwood telling her what to do. Winslow Deposition at p. 37.

[16] Lockwood Deposition at pp. 32-33

[17] Objection at ¶ 9

[18] All references to the Bankruptcy Code or Code are to 11 U.S.C. §§ 101 *et seq.*

4

case was converted to one under chapter 7 of the Code. Mr. Weiss was appointed the chapter 7 trustee in Mr. Lockwood's case. Recovery Capital and Mr. Horowitz, as manager of Recovery Capital and individually, are the major creditors of Mr. Lockwood's estate.

Meanwhile, with the note secured by the mortgage on the Beverly property in default, Chase, the new owner of the note, began the process of foreclosing its mortgage on the Beverly property. A foreclosure sale eventually was scheduled for October 20, 2011. On October 18, 2011, Mr. Lockwood's sons, who by then had both reached the age of majority, appointed Mr. Lockwood as trustee of the Trust. On October 19, 2011, Mr. Lockwood caused the Trust to transfer title to the Beverly property to Blackstone Financial Holdings LLC, the debtor in this case. On October 20, 2011, prior to the scheduled foreclosure sale, Blackstone filed a chapter 11 petition commencing this case. Blackstone's reorganization efforts, like Mr. Lockwood's, were unsuccessful and its case was converted to one under chapter 7. John Aquino was appointed the chapter 7 trustee of Blackstone's estate and continues to serve in that capacity. The parties agree that Blackstone held title to the Beverly property when its bankruptcy case was commenced and when the Objection was filed. Mr. Aquino sold the Beverly property at a public auction sale on January 31, 2017.

Recovery Management and Mr. Horvitz commenced an adversary proceeding (Adversary Proceeding No. 11-1107) against Mr. Lockwood seeking to block his discharge or hold the debts he owed to them nondischargeable because of alleged misrepresentations. On October 16, 2013, the court approved a settlement of that adversary proceeding (the "Lockwood Settlement"). The stipulation of settlement included as parties Mr. Weiss and Mr. Lockwood's sons as well as the parties to the adversary proceeding. Pursuant to the Lockwood Settlement, the Lockwoods

assigned whatever interest in the Beverly property each of them had to Mr. Weiss. Mr. Aquino received notice of the motion to approve the Lockwood Settlement and did not object.

On February 1, 2013, Mr. Weiss commenced an adversary proceeding (Adversary Proceeding Number 13-1045) in Mr. Lockwood's case against several defendants alleging that many of them were alter egos of Mr. Lockwood. Neither Blackstone nor Mr. Aquino was named as a defendant. On June 20, 2013, however, Mr. Weiss filed a motion to amend the complaint to name Blackstone as a defendant on the grounds that it too was an alter ego of Mr. Lockwood. Mr. Aquino objected noting that it was his understanding that Mr. Weiss sought only to assert *an equity interest* in Blackstone. The court granted the motion but noted that Mr. Weiss' "rights are subordinate to the rights of the trustee of the Blackstone estate…."[19]

Chase filed a motion for relief from the automatic stay in this bankruptcy case in order to proceed with the foreclosure of its mortgage on the Beverly property. Ultimately, with Mr. Aquino's assent, the motion was allowed. Lacking funds to maintain and market the Beverly property, Mr. Aquino thereupon filed a notice and amended notice of his intention to abandon the Beverly property. The abandonment notice prompted a joint objection from Mr. Horvitz and Recovery Capital in which they requested that any party be permitted to challenge the validity of Chase's mortgage, that Mr. Aquino assign to them whatever rights he had to challenge the mortgage and that Chase escrow any proceeds from a sale of the Beverly property pending a determination as to the mortgage's validity. In response to the objection, Mr. Aquino and Chase entered into an agreement whereby, in exchange for receiving a $50,000 "carve out" from Chase payable to the Blackstone bankruptcy estate, Mr. Aquino would withdraw his notice of intention to abandon the Beverly property, and Chase would become a mortgagee-in-possession of the

---

[19] Order dated September 18, 2013, filed in Adversary Proceeding No. 13-1045, document #160.

Beverly property with responsibility for all of the ongoing expenses related to it, including the costs and expenses of marketing the Beverly property for sale (the "Blackstone Settlement"). The Blackstone Settlement was approved by the court without objection.

By order dated December 20, 2016, Mr. Aquino was granted permission to sell the Beverly property by public auction. The auction was held on January 31, 2017, and a winning bid of $3,225,000 was accepted. The sale has been completed. The Objectors, pursuant to the Lockwood Settlement, and Chase, pursuant to its mortgage, each claim entitlement to the sales proceeds. The Objectors challenge the validity of the mortgage and seek disallowance of Chase's secured claim. Chase has filed its motion for judgment on the pleadings requesting that its secured claim be allowed in full.

## Positions of the Parties

The Objection seeks disallowance of Chase's claim. First the Objectors assert that Chase's mortgage was void *ab initio* as Ms. Winslow, the trustee, lacked authority to execute the mortgage because the Trust's beneficiaries, who were minors when the loan was made, lacked the capacity to authorize her actions. The Objectors also argue that the loan was predatory under Massachusetts law as WAMU should have known that neither Ms. Winslow nor Mr. Lockwood could afford the mortgage payments.[20] They assert that WAMU's predatory practices are a *per se* violation of Mass. Gen. Laws ch. 93A, the Massachusetts Consumer Protection statute. Consequently they seek a judgment avoiding the mortgage and disallowing Chase's claim in its entirety. Alternatively, they ask that Chase's claim be "reduced by offsetting against it the

---

[20] In their Reply the Objectors have clarified that they are raising a common law predatory lending claim, not one based on the Massachusetts Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C.

7

amount of money it received as a result of the fraud Mr. Lockwood perpetrated upon Mr. Horvitz," which they estimate exceeds $3 million.

Chase responded to the Objection with several defenses that also form the basis for its motion for judgment on the pleadings. Chase argues that the Objectors lack standing, that their claims are barred under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), that WAMU was entitled to rely on Ms. Winslow's certification of her authority to mortgage the Beverly property, that in any event under the P&A Agreement between it and the FDIC Chase is not liable for any claims that the Objectors may have had against WAMU, that the claims the Objectors are asserting against Chase are time-barred by the applicable statutes of limitations and that the Objection fails to state a claim for predatory lending and/or unfair practices.

At oral argument, the Objectors clarified that they are not seeking any affirmative monetary recovery from Chase under Mass. Gen. Laws ch. 93A or otherwise, only a ruling that Chase's mortgage is invalid and its claim is disallowed.[21] Relying on First Circuit precedent articulated in *Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 673 (1st Cir. 1999), they claim their Objection is defensive only and thus is not barred by FIRREA. Characterizing their attempt to disallow Chase's claim as an application of the defense of recoupment, they assert that no statute of limitations applies. Finally, because neither Mr. Lockwood nor Ms. Winslow had the ability to repay the WAMU loan and the beneficiaries of the borrowing Trust were minors, the Objectors maintain that they have stated a claim for predatory lending.

---

[21] This clarification at first glance appears at odds with the Objectors' request to offset Chase's claim by amounts which Mr. Lockwood allegedly obtained by fraud from Mr. Horvitz and Recovery Management. That request is discussed later in this opinion.

8

**Discussion**

A properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). An objection to such a claim does not eliminate the presumptive validity "unless the objection is supported by *substantial evidence.*" *Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (internal citations omitted). If the objector produces substantial evidence, then "the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim." *Id.* A typical objection to a proof of claim with no additional relief requested is a contested matter. See Fed. R. Bankr. P. 9014.

In this case, the Objectors included an attack on the validity of Chase's mortgage lien, which Fed. R. Bankr. P. 7001 and 3017(b) require be asserted by a complaint in an adversary proceeding. Fed. R. Bankr. P. 7001(2). Rather than deny the Objection on procedural grounds, however, I granted Chase's motion to apply to this matter the Federal Rules of Bankruptcy Procedure applicable to adversary proceedings.[22] This paved the way for Chase to file its motion for judgment on the pleadings.

---

[22] The Advisory Committee Note to the 2007 amendment to Rule 3007 which requires the filing of an adversary proceeding to request relief of the type sought by the Objectors states in relevant part:

> Unlike a contested matter, an adversary proceeding requires the service of a summons and complaint, which puts the defendant on notice of the potential for an affirmative recovery. Permitting the plaintiff in an adversary proceeding to include an objection to a claim would not unfairly surprise the defendant as might be the case if the action were brought as a contested matter that included an action to obtain relief of the kind specified in Rule 7001.

While the commencement of an adversary proceeding would certainly have been the preferred procedure, where Chase has not been unfairly surprised or placed at any procedural disadvantage, I have chosen in the interest of practical case administration not to elevate form over substance in this case. *The Educational Resource Institute, Inc.*, 442 B.R. 20, 24 (Bankr. D. Mass. 2010).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) (made applicable to bankruptcy case by Fed, R. Bankr. P. 7012) is scrutinized under essentially the same standard as a motion to dismiss, namely that the pleadings taken in the light most favorable to the non-movant must establish a plausible claim. *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 560 (2013) "A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54–55 (1st Cir. 2006). When reviewing a motion under Rule 12(c), the court may consider "documents the authenticity of which are not disputed by the parties; ... documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint." *Romanoff v. CitiMortgage, Inc.*, 189 F. Supp.3d 285, 288 (D. Mass. 2016) (internal citations and footnotes omitted).

<u>Standing</u>

After the Objection was filed, I issued an order to show cause as to why the Objection should not be overruled for lack of standing by the Objectors. After a hearing I concluded that standing existed and released the show cause order. Recognizing that a court should tread with caution before *sua sponte* reconsidering its own orders, *Ellis v. U.S.*, 313 F.3d 636, 646 (1st Cir. 2002), I now revisit the standing issue in order to clarify my prior ruling with respect to Mr. Horvitz and Recovery Management only.

A "party in interest," a phrase undefined in the Bankruptcy Code, may object to a proof of claim. Bankruptcy Code § 502(a). Courts generally define that phrase as referring to one having a pecuniary interest in the case. *Torres Martinez v. Rivera Arce (In re Torres Martinez)*, 397 B.R. 158, 164 (B.A.P. 1st Cir. 2008). Citing *In re Choquette*, 290 B.R. 183 (Bank. D. Mass. 2003), the Objectors assert that they all have standing because they all have a pecuniary interest in the disallowance of Chase's claim, Mr. Weiss because he has succeeded to the equity interest

10

of the Lockwoods in the Beverly property and Mr. Horvitz and Recovery Management because they are the largest creditors in Mr. Lockwood's bankruptcy case and their funds were used to make monthly mortgage payments to WAMU and Chase.

*Choquette* stands for the unremarkable proposition that a chapter 7 debtor in a surplus case has standing to object to a proof of claim. As the court in *Choquette* explained:

> The majority of courts have held that a Chapter 7 debtor has standing to object to claims where one or more of the following factual requisites obtained: 1) the debtor had a pecuniary interest in the result by way of a demonstrable surplus; 2) the trustee failed or refused to object to the claim or claims in question; and/or 3) the debtor's objection would not undermine the efficient administration of the estate.

*Id.* at 187.

Mr. Weiss as the representative of Mr. Lockwood's bankruptcy estate is bound to act in the best interest of all bankruptcy estate creditors. Bankruptcy Code § 704(a)(1). He is doing just that by pursuing the Objection against Chase. There is, however, no need or basis for Mr. Horvitz and Recovery Management to do the same.

Mr. Horvitz and Recovery Management are mistaken when they claim standing by virtue of a right of recoupment or setoff against Chase's claim to the extent they advanced funds to Mr. Lockwood.

> Setoff is in the nature of a counterclaim, enabling a creditor to reduce the amount of a claim against it by an amount owed to the creditor on a mutual unrelated debt. . . On the other hand, [r]ecoupment is the satisfaction of an obligation by the crediting against it of a reciprocal obligation arising from the *same transaction,* typically the same contract.

*In re Holyoke Nursing Home Inc.,* 273 B.R. 305, 311 (Bankr. D. Mass. 2002), *subsequently aff'd sub nom. In re Holyoke Nursing Home, Inc.,* 372 F.3d 1 (1st Cir. 2004) (emphasis in the original; internal citations and quotation marks omitted). Even assuming Mr. Lockwood obtained the funds fraudulently from Mr. Horvitz and Recovery Management and used those funds to pay the mortgage on the Beverly property, the payments from Mr. Horvitz and Recovery Management

11

do not arise from the same transaction as the mortgage loan. There is no mutual debt and, there is no possible argument that Chase is liable for Mr. Lockwood's fraud. Furthermore, even if Mr. Horvitz and Recovery Management were somehow able to assert a claim against Chase for setoff, such a claim would be in the nature of an affirmative recovery and, as discussed below, would be barred under FIRREA.

I find that neither Mr. Horvitz nor Recovery Management has standing to object to Chase's proof of claim and to that extent clarify or amend my prior ruling on standing. Since Mr. Weiss does have standing, the Objection nevertheless survives.

FIRREA

Although Mr. Weiss has standing to pursue the Objection because he has an economic interest in avoiding the mortgage, whether this court has jurisdiction to entertain his Objection is a different question. The answer depends on whether the administrative claims-processing regime established by FIRREA applies to Mr. Weiss' claims.

FIRREA was enacted in response to the savings and loan crisis of the 1980s. *Tellado v. IndyMac Mortg.* Services, 707 F.3d 275, 279 (3d Cir. 2013). It governs the FDIC's authority as receiver of a failed financial institution. *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1151 (1st Cir. 1992). Among other things, FIRREA creates an administrative process for handling claims against the FDIC or the failed institutions in FDIC receivership. *Id.* Ordinarily, a claimant must exhaust that process before initiating court action. *In re Miraj & Sons, Inc.*, 192 B.R. 297, 308–09 (Bankr. D. Mass.), *amended*, 197 B.R. 737 (Bankr. D. Mass. 1996). In *Miraj* the court succinctly described FIRREA's claims procedure as follows:

> The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") regulates the filing, determination, and payment of claims against the assets of failed financial institutions after the FDIC has been appointed receiver. Under the administrative claims process ("claims process"), the FDIC is required to publish

12

> and mail a notice to any creditor shown on the institution's books and to provide at least ninety days for the filing of claims. 12 U.S.C. § 1821(d)(3)(B) & (C). After a claim is filed, the FDIC has 180 days to allow or disallow the claim. § 1821(d)(5)(A)(i). When a claim is disallowed, the claimant has 60 days to either request administrative review of the claim or file suit. § 1821(d)(6)(A). If the claimant fails to file a claim or to take action within 60 days of disallowance of the claim, the claimant loses all rights and remedies with respect to the claim. §§ 1821(d)(5)(C)(i) & 1821(d)(6)(B)(ii). Additionally, the courts have no jurisdiction over any claim that is made outside the claims process. § 1821(d)(13)(D).

*Id.* at 308–09.

FIRREA's exhaustion requirement applies with respect to two categories of claims or actions: (1) claims or actions seeking "payment from, or any action seeking a determination of rights with respect to," the assets of an institution over which the FDIC is receiver, 12 U.S.C. § 1821(d)(13)(D)(i); and (2) claims relating to "any act or omission" of such an institution or of the FDIC as receiver, 12 U.S.C. § 1821(d)(13)(D)(ii). As the *Miraj* court explained, unless a party exhausts his administrative remedies through FIRREA's claims process, a federal court lacks jurisdiction to adjudicate the claim. The administrative claims process applies to third party purchasers of assets from the FDIC unless the third party commits acts that are actionable independent of the actions of the failed institution or the FDIC. *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008); *Lloyd v. F.D.I.C.*, 22 F.3d 355 (1st Cir. 1994) (holding debtor's suit to for equitable reformation or cancellation of mortgage was barred by FIRREA). Mr. Weiss has asserted no independent wrongdoing by Chase.[23]

FIRREA's exhaustion requirements apply to any party with a claim against a failed institution; to creditors and debtors alike. *Demelo v. U.S. Bank Nat. Ass'n*, 727 F.3d 117, 122–23 (1st Cir. 2013) ("FIRREA explicitly bars jurisdiction over '*any* claim relating to *any* act or

---

[23] His argument that Chase should have known of the loan's defects when it purchased the note and mortgage in bulk from the FDIC is implausible.

13

omission' of the failed financial institution. 12 U.S.C. § 1821(d)(13)(D)(ii) (emphasis supplied). We have given this provision the full scope that its text demands and, in doing so, we have not limited it to creditors' claims."); *Lloyd v. F.D.I.C.*, 22 F.3d 335, 337 (1st Cir. 1994) (holding debtor's suit for equitable reformation and/or cancellation of mortgage was barred by FIRREA as such claims "lie in the maw of the statute . . ."). *See also McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1079-80 (9th Cir. 2003) ("Other circuits have uniformly held that debtors' actions are subject to FIRREA exhaustion" and collecting cases); *Tri-State Hotels. Inc. v. F.D.I.C.*, 79 F.3d 707, 714 (8th Cir. 1993) ("The great weight of authority holds that FIRREA requires debtors as well as creditors to undergo the administrative review process.").

Whether there must be compliance with FIRREA's claims resolution process when a claimant is in bankruptcy is a question that has divided the courts. *See Miraj*, 192 B.R. at 310-11 (*citing,* among others, *Parker North American Corp. v. Resolution Trust Corporation (In re Parker North American Corp.)*, 24 F.3d 1145 (9th Cir. 1997); *Continental Fin. Resources*, 154 B.R. 385 (Bankr, D. Mass. 1993); *All Season's Kitchen, Inc.*, 145 B.R. (Bankr. D. Vt. 1992), all holding that FIRREA does not apply; *but see AMSave Credit Corp. v. Resolution trust Corp. (In the Matter of Am. Mortg. And Invest. Services, Inc.*, 141 B.R. 578 (Bankr. D.N.J. 1992). The United States Court of Appeals for the First Circuit in *Demelo,* recognizing the broad sweep of FIRREA's language, suggests there is no reason to alter FIRREA's applicability when the claimant against a failed bank happens to become a debtor in a bankruptcy case. I concur with the reasoning in *Demelo* in this regard.

Assuming FIRREA applies to claimants in bankruptcy, exhaustion of administrative remedies is nevertheless not required when the claimant's claims are asserted defensively against efforts to foreclose by the FDIC or its successor. *Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 673

(1st Cir. 1999). Whether the party asserting the defense is a plaintiff or a defendant is irrelevant to the determination. *Id.* at 671 ("[W]ho happens to be the plaintiff is not controlling."). On the other hand, labelling a counterclaim as a defense or an affirmative defense will not save a claim from the exhaustion requirement. A court "must look to applicable state law to determine whether the defendant's assertion can be fairly characterizes as a defense. *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 122 (D.N.J. 1994) (internal citations and quotation marks omitted).

At oral argument Mr. Weiss maintained that because he was not seeking any affirmative monetary recovery from Chase, FIRREA's exhaustion of administrative remedies requirements do not apply. This argument, however, implicates only the exhaustion requirement imposed by subpart (i) of § 1821(d)(13)(D). Mr. Weiss' claim that because of WAMU's acts and omission the mortgage on the Beverly property should be declared void also implicates subpart (ii) of § 1821(d)(13)(D) of FIRREA.

The need for a litigating party to surmount the barriers to entry raised by *both* subparts (i) and (ii) § 1821(d)(13)(D) is nicely illustrated by the First Circuit's decision in *Bolduc* and subsequent decisions clarifying it. In *Bolduc*, Beal Bank, which had acquired the Bolducs' notes and mortgages from the FDIC as receiver of a failed bank, began foreclosure of one of the mortgages. The Bolducs brought suit to enjoin the foreclosure. Among the Bolducs' assertions was that the failed bank had required Maureen Bolduc to sign certain notes and mortgages in violation of the Equal Credit Opportunity Act. In holding that the Bolducs' claims were not barred by FIRREA's exhaustion requirement, the First Circuit stated:

> The difficulty is that the mortgages in this case have a double aspect. From one standpoint, they are potential claims by the bank to recover (out of specific property of the Bolducs) debts owed to the bank by the Bolducs; to this extent, the exhaustion requirement does not apply. But from another angle, a successful injunction suit by the

15

> Bolducs could be viewed as cutting off the bank's rights to *property* currently in the bank's possession, namely, a contingent property interest represented by the mortgages themselves.
>
> In the end, we think that the Bolducs' suit does not quite fit within the statutory language that delineates the exhaustion requirement. It is not a claim by the Bolducs seeking any kind of "payment" from any bank, 12 U.S.C. § 1821(d)(13)(D); and as no one disputes that Beal Bank *owns* the mortgages—the fight is about the possible defenses to foreclosure—it is hard to describe the Bolducs' action as one seeking "a determination of rights with respect to" a bank asset, *id.* We therefore conclude that FIRREA poses no bar to the Bolducs' argument on the merits.

*Bolduc*, 167 F.3d at 672.

After *Bolduc* other circuits have analyzed its holding and pointed out that *Bolduc* addresses only subpart (i) of 1821(d)(13)(D), which requires administrative exhaustion before bringing a claim for a monetary award, and not subpart (ii), which imposes the administrative exhaustion requirement on claims relating to the failed bank's "acts or omissions." In *Rundgren v. Washington Mut. Bank, FA*, 760 F.3d 1056, 1063–64 (9th Cir. 2014), the court noted:

> In *Bolduc,* the First Circuit examined whether a lawsuit by borrowers against the FDIC to stop a nonjudicial foreclosure was barred by § 1821(d)(13)(D). 167 F.3d at 669–70, 672. *Bolduc* reasoned that under FIRREA, it did not matter "who happens to be the plaintiff" because "[t]he purpose of the exhaustion requirement is to make persons with claims against bank funds or property submit them promptly in a single administrative forum." *Id.* at 671. According to *Bolduc,* "[o]ne alleged merely to owe the bank money" is not bringing such a claim, "whether the debtor asks a court for a preemptive declaration or injunction against the bank claim or merely awaits suit by the bank and then defends." *Id.* at 671–72. Nevertheless, *Bolduc* expressed uncertainty as to whether a borrower attempting to stop a foreclosure was equivalent to a person who merely owed the bank money. The court noted that mortgages "have a double aspect": if the borrower's lawsuit is deemed a response to potential claims of the bank to recover debts owed to the bank by the borrowers, then "the exhaustion requirement does not apply," but if the borrower's lawsuit is viewed "as cutting off the bank's rights to *property* currently in the bank's possession, namely, a contingent property interest represented by the mortgages themselves," then the exhaustion requirement might apply. *Id.* at 672. In the end, the court did not resolve this "double aspect" problem, but concluded that the borrower's suit in that case "does not quite fit within the statutory language that delineates the exhaustion requirement" primarily because "it is hard to describe the [borrowers'] action as one seeking 'a determination of rights with respect to' a bank asset." *Id.; cf.* 12 U.S.C. § 1821(d)(13)(D)(i) (stripping a court of jurisdiction over

16

> "any action seeking a determination of rights with respect to, the assets of any depository institution" in the hands of the FDIC). *Bolduc* did not address the language of § 1821(d)(13)(D)(ii), which refers to a "claim relating to any act or omission" of the failed bank.

*Id.* (Footnote omitted).

In *Willner v. Dimon*, 849 F.3d 93, 110 (4th Cir. 2017), the court recognized the same limitation in *Bolduc* as identified by the Ninth Circuit in *Rundgren*.

> Though FIRREA contains two exhaustion requirements, subsections (i) and (ii) of § 1821(d)(13)(D), *Bolduc* considered only subsection (i), even though the plaintiffs' suit was seemingly based upon the insolvent bank's acts and omissions and thus within the ambit of subsection (ii). Moreover, the First Circuit recognized, but did nothing to resolve, the fact that "a successful injunction suit by the [plaintiffs] could be viewed as cutting off the bank's rights to property currently in the bank's possession," thereby depriving the suit of its characterization as an affirmative defense.

In the First Circuit's decision in *Demelo*, decided after *Bolduc*, the court, in holding that FIRREA applies to claims that the failed bank had violated various consumer protection statutes, stated that FIRREA's "claims-processing regime is not optional: participation in it is mandatory for all parties asserting claims against failed institutions. The failure to pursue an administrative claim is fatal." *Demelo*, 727 F.3d at 122 (internal citation and quotation marks omitted).

Finally, in *Proal v. JPMorgan Chase Bank, N.A.*, 641 Fed. Appx. 9 (1st Cir. 2017), the First Circuit confronted subpart (ii) of § 1821(d)(13)(D) directly. The court confirmed *Demeleo's* holding that "a mortgagor's claim against a post-receivership mortgagee arising out of a pre-receivership act by a failed institution is subject to the FIRREA's administrative exhaustion requirement., *id.* at 10, but then found, based on the specific facts before it, that Ms. Proal's claims were asserted against a predecessor of the failed institution and so FIRREA's exhaustion requirement did not apply in that specific instance.

Here, Mr. Weiss argues that WAMU's conduct in making the loan on the Beverly property was predatory; that it knew or should have known that neither Ms. Winslow nor Mr. Lockwood could possibly repay it. This is a claim that falls squarely within § 1821(d)(13)(D)(ii). Moreover, unlike *Bolduc* and other cases in which a mortgagor raises claims purely as a defense to foreclosure, here there is no foreclosure. Stripped to its essence the Objection is a claim for money (in the sense of depriving Chase of its rights to collect) based on WAMU's alleged bad acts and that is "within the maw of the statute." *Lloyd*, 22 F.3d at 337. Thus this court lacks jurisdiction to adjudicate this matter.

## Conclusion

For the foregoing reasons, Chase's motion for judgment on the pleadings will be granted and the Objection will be overruled and, to the extent the Objection requests declaratory relief, it will be dismissed.

Separate orders will issue.

At Boston, Massachusetts this 7th day of July, 2017.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Anthony J. Manhart, Esq.
Preti Flahery, LLP
Portland, ME
for JPMorgan Chase Bank, N.A.

Jeffrey Sternklar, Esq.
Boston, MA
for Recovery capital, LLP and Jeffrey E. Horvitz

Steven Weiss, Esq.
Shatz, Schwartz and Fentin, P.C.
Springfield, MA
for Steven Weiss, Chapter 7 Trustee of the estate
of Robert E. Lockwood II